# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DARLENE PENA, on behalf of her son,
DYLAN PENA,

        Plaintiffs,

v.                                No. CIV 04-1352 LFG/RLP

BELEN CONSOLIDATED SCHOOLS and
BOARD OF EDUCATION OF BELEN
CONSOLIDATED SCHOOLS,

        Defendants.

## MEMORANDUM OPINION AND ORDER

### Introduction

THIS MATTER[1] is before the Court on the parties' cross motions for summary judgment on Plaintiffs' Complaint for Award of Attorneys Fees and Costs Pursuant to the Individuals with Disabilities Education Act ("IDEA"). On December 3, 2004, Plaintiffs, Darlene Peña ("Ms. Peña") and Dylan Peña ("the Peñas or Dylan"), filed a Complaint requesting an award of fees and costs under 20 U.S.C. § 1415(i)(3)(B), the IDEA provision for awards of attorneys fees. On November 15, 2005, the Peñas filed their motion for summary judgment, and that motion is fully briefed.[2] [Doc.

---

[1] The parties consented to having the undersigned United States Magistrate Judge resolve the request for attorneys' fees.

[2] It appears that Defendants filed their responsive brief some days after the deadline for doing so without obtaining permission to file a tardy response. The Court need not consider untimely briefs although it elects to do so in this case and to consider all of the pleadings. Case management plans, as well as response and reply times contained in the Court's rules, are intended to provide for the expeditious, efficient and economical disposition of matters on the Court's docket, and to ensure that cases are resolved within specific time limits under the District's Expense and Delay Reduction Plan. These time limits may not be ignored. Counsel is advised that in all future civil litigation in this district counsel must adhere to the pertinent federal court rules in meeting briefing deadlines and/or provide appropriate explanations for failing to do so.

Nos. 28, 35, 36, 37.]  On November 18, 2005, Defendants Belen Consolidated Schools and Board

of Education ("Belen Schools" or "Defendants") filed their cross motion for summary judgment, and

on December 2, 2005, the Peñas filed a response.  [Doc. Nos. 32, 33.]  The time for Defendants'

reply, in support of their cross-motion, elapsed.  The Court finds there is no need for a hearing before

resolving the cross-motions for summary judgment.  After careful consideration of the pertinent law,

briefs and attachments, the Court concludes that both cross-motions for summary judgment should

be granted in part and denied in part.  The Court's reasoning follows.

## Background

The IDEA, 20 U.S.C. § 1400, *et seq.*, requires any state educational agency receiving

assistance under the Act to establish and maintain certain procedures that ensure children with

disabilities and their parents are guaranteed procedural safeguards regarding the Act's provision of

free appropriate public education ("FAPE") by such agencies.  20 U.S.C. § 1415(a).

> The IDEA provides federal money to state and local agencies for the education of disabled children.  The Act guarantees all disabled children between the ages of three and twenty-one access to "a free appropriate public education which emphasizes special education and related services designed to meet their unique needs . . . ."
> . . .
> In order implement these goals, the IDEA requires the state to provide each disabled child with an individualized education program (IEP). An IEP is a written statement of (1) the child's present performance level, (2) the goals and instructional objectives to be attained, (3) the specific educational services to be provided, (4) the child's needed transition services, (5) the projected dates for initiation and completion of such services, and (6) the criteria and procedures to be used to assess progress toward the instructional objectives.

Urban v. Jefferson County School District, 89 F.3d 720, 722 (10th Cir. 1996) (internal citations

omitted).  The IDEA places emphasis on parental participation in the development of an IEP.  In

2

addition, the Act entitles parents to bring a complaint on any matter relating to the evaluation or placement of their child and to seek an impartial due process hearing after bringing such complaint. Id. (citing 20 U.S.C. § 1415).

Stated briefly, the Peñas contended inter alia that Dylan, who was born profoundly deaf in March 1999, was denied a free appropriate public education by the Belen Schools in violation of the IDEA. See 34 C.F.R. § 300.121(c)(1)(i); § 6.31.2.11(A) NMAC (a free appropriate public education must be made available for a child no later than the child's third birthday, with an Individual Educational Program in effect for the child by that date).

Based on their allegations and in accordance with provisions of the IDEA, the Peñas filed a Request for Due Process Complaint on July 15, 2003 and an Amended Complaint on September 22, 2003. Belen Schools denied the allegations. A due process hearing was conducted by an impartial hearing officer. The hearing lasted a total of approximately 11 days over the months of January, March and April 2004. The hearing officer issued a 38-page opinion and order on October 5, 2004. [Doc. No. 28, Ex. 1(B).] The hearing officer's determinations were partially favorable to the Peñas, but the Peñas were not successful on all of their claims. Neither party appealed the hearing officer's decision, and the administrative proceedings are complete. [Doc. No. 1, ¶¶ 10, 11.]

### Cross-Motions for Summary Judgment

The IDEA provides the federal district court with jurisdiction of actions concerning disputes over attorney's fees in regard to administrative proceedings brought under that Act. 20 U.S.C. § 1415(3)(A). Subsequent to the administrative proceeding and decision, the Peñas filed their request for attorney's fees in federal district court, seeking fees and costs in the amount of $92,204.43. In the Peñas' motion for summary judgment, they assert the undisputed material facts demonstrate they

were the prevailing party.  They concede they were not entirely successful with respect to all of their claims, but contend they still should be deemed a "prevailing party" for purposes of an award of attorney's fees.  In addition, the Peñas contend that the requested attorney's fees are reasonable under pertinent legal standards and appropriate based on the degree of success obtained.

Belen Schools argue in their cross-motion for summary judgment that the undisputed material facts show that the Peñas did not "substantially prevail" and that the relief obtained was *de minimus*.[3] Thus, Belen Schools contend that the Peñas are not entitled to any attorney's fees under the IDEA because they cannot satisfy the preliminary hurdle of being deemed a "prevailing party."  They further argue that even if considered a "prevailing party" as to some of the Peñas' claims, the requested fees should be reduced significantly because the Peñas' two attorneys "unnecessarily churned and prolonged the proceedings and unnecessarily duplicated their efforts."  [Doc. No. 32, p. 4.]

### Summary Judgment Legal Standard

Summary judgment is not a "disfavored procedural shortcut."  Rather, it is an important procedure designed to "secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).   Summary judgment is appropriate when the moving party can demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598 (1970); Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995).  The party moving for summary judgment has the initial

---

[3]Belen Schools does not assert they are the prevailing party.  Rather, they admit that Plaintiffs succeeded, at least in part, during the administrative proceedings.  Their motion for summary judgment argues that the undisputed material facts demonstrate Plaintiffs were not a "prevailing party" under applicable law and/or that the requested fees are unreasonable.

burden of establishing, through admissible evidence in the form of depositions, answers to interrogatories, admissions, affidavits or documentary evidence, that there is an absence of evidence to support the opposing party's case and the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 325.

The factual record along with any reasonable inferences that may be drawn therefrom must be examined in the light most favorable to the party opposing summary judgment. Spaulding v. United Transp. Union, 279 F.3d 901, 904 (10th Cir.), *cert. denied*, 537 U.S. 816 (2002). Once the moving party meets its burden, the party opposing the motion must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S. Ct. 2505, 2510 (1986); Biester v. Midwest Health Servs, Inc., 77 F.3d 1264, 1266 (10th Cir. 1996). The party opposing the motion may not rest upon the mere denials of his pleadings to avoid summary judgment. Fed. R. Civ. P. 56(e); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." Mitchell v. City of Moore, Okla., 218 F.3d 1190, 1197-98 (10th Cir. 2000) (internal citation omitted).

Here, where the parties have filed cross motions for summary judgment, "[the court is] entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." James Barlow Family Ltd. Partnership v. David M. Munson, Inc., 132 F.3d 1316, 1319 (10th Cir. 1997), *cert. denied*, 523 U.S. 1048 (1988). In this regard, each party as the nonmovant is given "wide berth to prove a factual controversy exists." Jeffries v. Kansas, 147 F.3d 1220, 1228 (10th Cir. 1998)

(internal citation omitted), *abrogated on other grounds by* 2005 WL 3120640 (10th Cir. Nov. 23, 2005).  Therefore, the legal standard remains the same – each party has the burden of establishing the lack of a genuine issue of material fact and entitlement to judgment as a matter of law.  Atlantic Richfield Co. v. Farm Credit Bank, 226 F.3d 1138, 1148 (10th Cir. 2000).

## Undisputed Material Facts

The Court agrees with the parties' contentions that there are no genuine issues for trial with respect to Plaintiffs' request for attorney's fees and costs.  The fee question can be resolved as a matter of law based on the undisputed material facts.  The Court does not attempt to recite the entire history of the administrative proceeding, but finds it necessary to set forth certain historical facts in order to resolve the present attorney fee dispute.

## Underlying Dispute

The following facts are uncontested and taken from the parties' pleadings and submissions, and in particular from the due process hearing officer's written decision.[4]  On March 2, 1999, Dylan, the son of Ms. Peña, was born profoundly deaf.  Dylan failed the newborn hearing screening and was

---

[4]Defendants' response to Plaintiffs' cross-motion fails to comply with D.N.M. LR-Civ 56.1(b).  That local rule requires that an oppositional brief contain a "concise statement of the material facts as to which the party contends a genuine issues does exist."  The fact(s) in dispute "must be numbered, must refer with particularity to those portions of the record upon which the opposing party relies, and must state the number of the movant's fact that is disputed.  All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted."  D.N.M. LR-Civ 56.1(b).  Defendants' response [Doc. No. 35] generally avers that "Defendants have answered much of Plaintiff's argument in their [own] Motion for Summary Judgment . . ., which is incorporated by reference herein."  This is insufficient.

It imposes the onus on the Court to determine which facts, if any, are in dispute by a comparison of the two motions.  Defendants' cross-motion does not address all of Plaintiffs' statement of undisputed facts by specific number.  Thus, it is difficult for the Court to determine which facts, if any, Defendants dispute in Plaintiff's cross-motion.  It is for this very reason that Local Rule 56.1(b) exists.  To the extent that the Court relies upon some of Plaintiff's proposed undisputed material facts, they are deemed admitted due to Defendants' failure to specifically and properly controvert those facts.  *See* N.S. v. Stratford Board of Education, 97 F. Supp. 2d 224, 227 (D. Conn. 2000) ("One important purpose of [the court's similar local rule] is to direct the court to the material facts that the movant claims are undisputed and that the party opposing the motion claims are disputed.  Otherwise the court is left to dig through a voluminous record, searching for material issues of fact without the aid of the parties.")

referred to Dr. Karl Horn at the Presbyterian Ear Institute ("PEI"). When Dylan was 18 months old, Dylan received a cochlear implant[5] to help him hear. Dr. Horn refers all families whose children are deaf or hard of hearing to PEI, of which he is the founder and president. PEI is a private school that provides educational services to children with cochlear implants.

It is undisputed that alternative programs were available for Dylan through the publically funded New Mexico School for the Deaf ("NMSD"). The NMSD's programs, however, utilized traditional instruction in sign language or a combination of sign and vocal language instruction. The Peñas were adamant that a sign language program was detrimental[6] and insisted upon a vocal only program as offered by PEI.

Dylan began receiving early intervention services at PEI when he was an infant and began PEI's toddler program when he was two years old. He was on a scholarship at the PEI but was still required to pay partial tuition. Ms. Peña had to transport Dylan almost seventy miles each day to and from school.  In the 2002-2003 school year, Dylan started PEI's preschool/elementary program. Dylan and his mother assert that they had to pay for Dylan's education at PEI, even though the provisions of IDEA require he be given a free appropriate public education ("FAPE"). Thus, they allege he was denied a FAPE. The IDEA also requires that the school have an Individual Educational Program ("IEP") in place by the student's third birthday. Dylan's first IEP meeting took place in September 2002, when he was 3 ½ years old. Thus, Plaintiffs alleged a procedural violation of the IDEA on that ground.

---

[5]A cochlear implant is not an auditory amplification aid but instead is a technologically advanced device that creates a series of electrical impulses that allow the deaf individual to hear. A major goal of the cochlear implant is to enable the deaf individual to communicate through vocal speech.

[6]Ms. Peña was not instructed in sign language and was unable to communicate with her son in sign.

The Peñas sought the following relief: partial tuition reimbursement for Dylan's attendance at PEI during 2002-2003 and during 2003-2004, along with tuition at PEI for as long as his attendance there is necessary before he can attend his grade level class at his neighborhood school; reimbursement of transportation costs to PEI during 2002-2003 and continuing until Dylan no longer needs to attend PEI; consideration by Belen Schools of entering into a Joint Power Agreement with PEI to provide a continuum of placement options for the deaf/hard of hearing students in the future; and training for the Belen Schools on strategies for full participation of parents in IEP's, along with appropriate use and provision of prior written notice. The hearing officer's decision also notes that Dylan requested an award of compensatory education services for Belen Schools' failure to evaluate him for physical or occupational therapy and for the school's failure to provide or offer Dylan related services, from March 2, 2002 to January 10, 2003.

The hearing officer's decision summarized the Peñas' amended due process complaint as follows: Belen Schools' failure to offer FAPE to Dylan; FAPE was denied because Belen Schools did not provide an IEP, as required, by age 3; Dylan's parent was not included as an equal partner in the IEP process; Belen Schools failed to provide adequate written notice under IDEA provisions; the current IEP was not reasonably calculated to provide Dylan with FAPE; and Belen Schools failed to provide a continuum of alternative placements for Dylan. [Doc. No. 28, Ex. 1(B), p. 2 of opinion.]

The hearing officer found, *inter alia*, that PEI provided a curriculum that advocated "oral only" education rather than the use of sign language for children with cochlear implants. Dylan's mother insisted that her son not learn sign language but rather receive training that would allow him to vocalize and communicate orally. The Belen Schools rejected Plaintiff's request for an oral

language program and recommended that Dylan attend the publicly funded NMSD.[7]  In the undefined past, the NMSD had used a combination of sign language and spoken language educational programs. The NMSD did not have a program in place that offered "oral only" education.  As of January 2002, the NMSD provided a hybrid oral-based approach 95% of the time, with the remainder in sigh language, for children with cochlear implants, but before then, NMSD was unable to provide the oral language program sought by Ms. Peña.  With the commencement of the January 2002 semester, however, NMSD could meet Dylan's unique needs.  Nonetheless, the hearing officer found that prejudicial procedural violations did not allow FAPE to become available to Dylan until essentially the conclusion of the January 2003 semester.

The hearing officer concluded that Plaintiffs had proven some substantive and procedural violations of the IDEA sufficient to justify a partial award of reimbursement for his attendance at PEI for the 2002-2003 school year (excluding summer school but through the Spring semester), at which time FAPE became available for Dylan's needs.  The hearing officer also determined that Belen Schools did not have in place and did not make available to Dylan an IEP that addressed his needs by his third birthday, did not make a written offer of services or placement to Dylan that would provide him with FAPE before his third birthday, and did not have an IEP for Dylan until about six months after his third birthday, all of which constituted procedural violations of IDEA.

In addition, the hearing officer found that the September 3, 2002 IEP did not consider all of the particular needs of Dylan.  "[T]he IEP errors in whole were more than just technically deficient,

---

[7]This fact is included in Plaintiffs' statement of undisputed material facts.  The hearing officer found and concluded that Belen Schools neither identified Dylan as eligible for special education services nor offered him special education services as of his third birthday.

but showed, rather, a rational basis to believe the inadequacies compromised [Dylan's] right to an appropriate education or deprived him of educational benefits."

The hearing officer ordered Belen Schools to reimburse Ms. Peña for her out-of-pocket costs, not covered by the scholarship, for Dylan's tuition at PEI from March 2, 2002 up through the end of the semester beginning in January 2003, i.e., through May or June 2003. Belen Schools also was to reimburse Ms. Peña for her mileage and transportation costs for Dylan's attendance at PEI for the same period of time. Plaintiffs' requests for tuition and travel reimbursement after the January 2003 semester were denied.

Defendants were also ordered to provide a compensatory education for occupational and physical therapy services from March 2, 2002 through the January 2003 semester, for one hour per week in 2-30 minute sessions. The hearing officer denied Dylan's request for a comprehensive sensory evaluation and denied his request to order Belen Schools to develop an IEP designating his placement at PEI for the 2004/2005 school year.

The hearing officer's concluded that Dylan "substantially prevailed on Issue 2, [failure to evaluate Dylan in his needs and to provide him with FAPE from March 2, 2002 through the January 11, 2003 semester]" for which he was awarded reimbursement and compensatory educational

services.  The hearing officer's decision also records a number of procedural violations by Belen

Schools. "The District prevailed on the remaining issues."[8]

## Analysis

### I.  LEGAL STANDARD - ATTORNEYS FEE REQUEST

Under the IDEA, the district court has discretion to award reasonable attorney's fees to a

"prevailing party."  20 U.S.C. § 1415(i)(3)(B).  In Urban, the Tenth Circuit clarified that Congress

intended the term "prevailing party" under the IDEA to mean the same as it does under 42 U.S.C.

§ 1988.  Urban, 89 F.3d at 728-29.  See also Board of Education of Frederick County v. I.S., 358

F. Supp. 2d 462, 465 (D. Md. 2005) (district court likened the IDEA attorneys fee provision to 42

U.S.C. § 1988).  The Maryland District Court explained:

> In a civil rights action, the Supreme Court in Hensley v. Eckerhart,
> 461 U.S. 424 (1983) stated that a litigant is a prevailing party for
> purposes of an attorney's fees award "if they succeed on any
> significant issue in litigation which achieves some of the benefit the
> parties sought in bringing suit."

In another IDEA attorneys' fees case, the District Court for the District of Connecticut further noted

the standard [in awarding attorneys fees] is a generous one.  G.R. v. Regional School District #15,

1996 WL 762324 at *4 (D. Conn. Dec. 26, 1996) (citing Hensley, 461 U.S. at 433)).[9]

---

[8]Some of the issues on which the Peñas did not prevail were: a finding that Belen Schools failed to provide Dylan with FAPE from March 2 through Sept. 3, 2002 *based on a failure to identify him as an eligible child* (Belen Schools had so identified him and a FAPE was not denied on that ground)*;* a finding that Dylan was denied a FAPE because of Belen Schools' failure to evaluate his disability (Belen Schools did evaluate him although the evaluation was untimely constituting a procedural violation); a finding that Ms. Peña was not included as an equal partner in the IEP process; reimbursement for tuition and travel expenses after the January 2003 semester; and, a finding that Belen Schools unilaterally decided to reject PEI as a placement alternative.  *See* Hearing Officer's Decision [Doc. No. 28, Ex. 1B for a more detailed explanation of which claims succeeded and which did not succeed.]

[9]The Court recognizes that district court opinions are not binding authority, but finds that they may have some persuasive value in analyzing this issue.

> At a minimum, the plaintiff must demonstrate a change in the legal relationship of the parties.  In applying the prevailing party standard, it is helpful to identify the relief sought by the plaintiff and compare it with the relief obtained as a result of the suit.  Even in the absence of formal judicial relief, prevailing party status may be conferred on a plaintiff upon a showing of an appropriate causal connection between the suit and any extrajudicial action taken vindicating his rights.  That is, that the plaintiff's lawsuit was a catalytic, necessary or substantial factor in attaining relief.

Id. (internal citations omitted).  *See also* Urban, 89 F.3d at 729 (plaintiff prevails when actual relief on the merits of claim materially alters the legal relationship between the parties).

The federal district court for the District of Connecticut has also explained that in determining whether a party is deemed "prevailing" under the IDEA, a court must consider whether the plaintiffs:

> (1) obtained the relief on a significant claim in the litigation; (2) whether the relief materially altered the parties' legal relationship; and (3) whether the relief is more than *de minimus* in nature.  In other words, [a] plaintiff may be considered a prevailing party even though the relief ultimately obtained is not identical to the relief demanded in the complaint, provided the relief obtained is of the same general type.

N.S. v. Stratford Board of Education, 97 F. Supp. 2d 224, 239 (D. Conn. 2000) (quotation found in Magistrate Judge's Proposed Ruling that was attached and adopted by District Court).

The Tenth Circuit further reasoned that even if a party is deemed to have prevailed, attorneys fees must also be reasonable, which depends, in part upon the degree of success obtained by the plaintiff.  Urban, 89 F.3d at 729.  The Court proceeded to note that some cases do not warrant any attorney's fees at all.  Id. (*citing* Farrar v. Hobby, 506 U.S. 103, 115 (1992)).  The United States Supreme Court in Farrar explained that the prevailing party determination does not depend upon the magnitude of relief obtained, although the size of the attorney fee award does.  Farrar, 506 U.S. at

114.  The Supreme Court stated that the "most critical factor" in determining the reasonableness of an attorney fee award "is the degree of success obtained."  Hensley, 461 U.S. at 436.

## II.  DISCUSSION

### A.  Prevailing Party Status

The Court rejects Defendants' position that Plaintiffs should not be deemed a prevailing party for purposes of an attorney's fee award under the IDEA.  Defendants argue that Ms. Peña did not substantially prevail in this matter because she did not achieve her "ultimate goal" and the hearing officer's decision did not alter the legal relationship of the parties.  Defendants also contend that Plaintiffs should not be deemed a prevailing party because the monetary award the Peñas received and the award of compensatory therapy were *de minimus* and "meaningless."  The Court disagrees.

In this case, the hearing officer concluded that Belen Schools committed substantive and procedural violations of the IDEA.  This conclusion served to vindicate Dylan's federally protected rights.  Moreover, the hearing officer determined that Belen Schools' violations were sufficient to warrant reimbursement to Plaintiff for at least a portion of Dylan's attendance at PEI and some of his transportation costs.  At pages 24-26 of his opinion, the hearing officer set forth a number of procedural violations he found with respect to the actions or non-actions taken by Belen Schools.  For example, Belen Schools' evaluations of Dylan's needs of suspected disability were untimely.  Belen Schools did not make an IEP available to Dylan by his third birthday as required by the IDEA.  Belen Schools did not make a written offer of service or placement to Dylan which would provide him with FAPE before his third birthday.  Belen Schools did not have an IEP in place for Dylan by his third birthday.  The earliest IEP of September 3, 2002, did not consider the particular needs of Dylan.  "[T]he IEP errors in whole were more than just technically deficient, but showed, rather, a

13

rational basis to believe the inadequacies compromised the Student's right to an appropriate education or deprived him of educational benefits."  Hearing Officer Opinion, p. 25-26.  These were all claims pressed by the Peñas but rejected by Belen Schools.

In comparing the hearing officer's conclusions with the requests made by Plaintiffs, the Court observes that Plaintiffs sought and received tuition reimbursement at PEI and travel expenses to PEI (although they did not obtain as much as they requested).  The Court further notes that the hearing officer agreed with Plaintiffs' contention that Dylan was denied FAPE because he was not provided an IEP by age three.  The Court views the vindication of Dylan's rights and these specific successes by Plaintiffs to have been significant, even if the actual monetary value of the awards was relatively modest.  *See* Board of Education of Frederick County, 358 F. Supp. 2d at 466 (court found that the award of funding from the school district for the student's placement at a non-public school was "very significant," even though plaintiffs did not receive all of the funding they requested).  Moreover, here, Defendants supply no binding legal authority for the proposition that Plaintiffs can only be deemed prevailing parties if they attain their "ultimate" goal.[10]

Admittedly, Plaintiffs won few of the claims they asserted, but in order to be deemed a prevailing party, they need not be 100% successful.  For example, in Fowler v. Unified School Dist. No. 259, 128 F.3d 1431, 1439-1440 (10th Cir. 1997), the Court affirmed its prior holding that the

_____

[10]While Defendants cite Urban for this proposition, the Court never used the phrase "ultimate goal" in its analysis and decision.  In any event, Urban does not substantially assist Defendants.  In that case the plaintiffs challenged the school district's refusal to place him in a neighborhood high school and the district's failure to assess his need for transition services.  The court held that the student had received a FAPE and was not entitled to placement in the school he sought.  However, the Court found a procedural violation in that the school failed to provide "a statement of transition services" and remanded so that the IEP could be completed accordingly.  89 F.3d at 726.  Unlike the present case, it was clear in Urban that the plaintiff achieved success only as to his secondary and less significant claim.  The success related to a procedural violation only.  Moreover, the plaintiffs in Urban were still considered prevailing parties, although the Court denied the fee request.

plaintiffs were a prevailing party when they received partial, although not total, reimbursement for a sign language interpreter the school district initially refused to pay for or provide. *See also* <u>Board of Education of Frederick County</u>, 358 F. Supp. 2d at 466 (party deemed prevailing even though not 100% successful at due process hearing); <u>Stratford Board of Education</u>, 97 F.Supp. 2d at 229-230 (the relief formally requested by the plaintiff is a starting point for determining prevailing party status, but it is not the ending point of the analysis).

In addition, the Court concludes that there was a material alteration of the legal relationship between Plaintiffs and Belen Schools. The Court's conclusion is based on the hearing officer's determination that Dylan was not properly provided a FAPE under IDEA for a certain period of time due to numerous procedural violations and his order requiring Belen Schools to reimburse Plaintiffs for private school tuition and transportation costs (during a time when FAPE was not available). The hearing officer's findings and conclusions did resolve part of the dispute raised by Plaintiffs, and therefore, did change the legal relationship between the Peñas and Belen Schools. Prior to the ruling, Belen Schools resisted and believed it had no obligation to pay even a portion of the private school tuition. The result of the due process hearing forced Belen Schools to do something it had refused to do. Thus, its legal relationship vis a vis the Peñas was altered. Stated differently, the Peñas' complaint "was a catalytic, necessary or substantial factor in attaining relief." <u>G.R. v. Regional School District #15</u>, 1996 WL 762324 at *4. *See* <u>Lopez v. Scott County Unified School District #466</u>, 2000 WL 1546822 at *3 (D. Kan. Oct. 10, 2000) ("If the plaintiff has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit,' the plaintiff crossed the threshold to a fee award of some kind.") (*citing* <u>Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.</u>, 489 U.S. 782, 792-93 (1989)).

Defendants also argue that the value of Plaintiff's award and/or reimbursement is so minimal as to deny them prevailing party status.  The Court disagrees.  To the extent that Defendants argue that Plaintiffs achieved only partial success, that challenge goes more properly to whether the fee request is reasonable, which the Court addresses *infra*.[11]

In this case, the Court has already found that Plaintiffs achieved success with respect to some of their claims.  Accordingly, and for all of the above-stated reasons, the Court determines that Plaintiffs are prevailing parties.

B.    Reasonableness of Attorney Fee Request

*i.    Fee Application and Opposition*

Plaintiffs' two attorneys aver that they billed 588.10 hours for a total of $112,638.74. Attorneys Poulin and Ford, on their own volition, discounted their total billing hours from 588.10 hours to 476.7 hours to account for travel time, clerical tasks that should not be billed at attorney rates and for some duplication of work.  They assert that $92,204.43 is reasonable under the circumstances of this case.

Defendants provide little specific argument to the contrary.  For example, they do not identify any billing entries that they claim are improper or unreasonable.  Instead, Belen Schools argue generally that Plaintiffs' attorneys "unnecessarily duplicated their efforts at every stage of the proceeding, with the possible exception of brief writing."  Defendants devote a single line to specifically argue that both Plaintiffs' attorneys sat through the entire hearing, even though Attorney

---

[11]Even in Linda T v. Rice Lake Area School District, 417 F.3d 704, 707-708 (7th Cir. 2005), cited by Defendants, the plaintiffs were deemed prevailing parties.  The Court in Linda T explained that the plaintiffs' success in that case was *de minimus* because they were successful only on secondary concerns that did not require any new or additional services.  Nonetheless, the Court concluded the plaintiffs were prevailing parties, even though it also determined that the plaintiffs' limited success did not justify an award of attorney's fees.  Id. at 709-710.

Ford gave only the opening statement and handled four of sixteen witnesses. In addition, while Defendants argue that Plaintiffs were only minimally successful, they do not identify any time entries for Plaintiffs' counsel that they contend related to issues on which Plaintiffs did not succeed.

Even though Defendants failed to provide specific objections to Plaintiffs' fee request, the Court's task does not end there. The Court has an independent obligation to evaluate the fee application and to determine the necessity of the time spent and the reasonableness of the application. *See, e.g.,* Ellis v. Univ. of Kan. Med. Ctr., 163 F.3d 1186, 1202 (10th Cir. 1998). (court is obligated to exclude hours "not reasonably expended" from the attorney fee calculation).

### ii.   *Award Calculation*

The starting point for determining the amount of a reasonable fee is to calculate the number of hours reasonably expended (by attorneys or paralegals) on the litigation and to multiply that number by a reasonable hourly rate. Ramos v. Lamm, 713 F.2d 546, 552 (10th Cir. 1983), *criticized on other grounds by* Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711 (1987). The resulting figure is referred to as the "lodestar" amount. Case v. Unified Sch. Dist. No. 233, 157 F.3d 1243, 1249 (10th Cir. 1998).

The plaintiffs bear the burden of establishing entitlement to an attorneys' fee award, documenting the appropriate hours expended, and showing that the hours claimed are reasonable. Id. at 1249-50. In other words, the Peñas' attorneys must "prove and establish [the] reasonableness of each dollar, each hour, above zero." Jane L. v. Bangerter, 61 F.3d 1505, 1510 (10th Cir. 1995) (citation omitted). The Tenth Circuit makes clear that attorneys of prevailing parties who seek attorneys' fees--

must keep meticulous, contemporaneous time records to present to the court upon request. These records must reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks-for example, how many hours were spent researching, how many interviewing the client, how many drafting the complaint and so on.

Ramos, 713 F.2d at 553. Block billing, or lumping tasks into a single entry of time, while not favored is not *per se* forbidden. Cadena v. Pacesetter Corp., 224 F.3d 1203, 1215 (10th Cir. 2000). Courts may discount requested attorney hours if the attorney fails to keep the required records or if the records are sloppy and imprecise. Id.; Jane L., 61 F.3d at 1510.

In addition, the Tenth Circuit recognizes that attorneys typically do not bill a client for every hour expended in litigation, and that attorneys should exercise "billing judgment" regarding the amount of hours actually billed. To show appropriate billing judgment, an attorney should make a good-faith effort to exclude those hours from the request that are excessive, redundant or otherwise unnecessary. Ellis, 163 F.3d at 1202. The Court has a corresponding obligation to exclude hours "not reasonably expended" from the calculation. Id.

In analyzing what hours are "reasonably" expended on specific tasks, the court may consider such factors as the "complexity of the case, the number of reasonable strategies pursued, and the responses necessitated by the maneuvering of the other side." Case, 157 F.3d at 1250. The Court also may examine whether the hours that were expended constituted a duplication of efforts by other attorneys. "For example, [if] three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time." Id. (*quoting* Ramos, 713 F.2d at 554)). In making this determination, the court can look to how many attorneys the other side utilized in similar situations. Id.

18

The Court may accept the lodestar proposed by a plaintiff as the reasonable amount to award or it may adjust the lodestar upward or downward, depending on the circumstances of the case. *See* Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 324 (5th Cir. 1995) (citation omitted), *cert. denied*, 516 U.S. 862 (1995).  In  reducing the lodestar, the Court may elect to discount requested fees by specific billing entry/hour or by making a general reduction of hours "to achieve what the court determines to be a reasonable number."  Case, 157 F.3d at 1250 (internal citation omitted); Hensley. 461 U.S. at 436-37 ("no precise rule or formula" required for determining attorney fee awarded to prevailing party).

### *iii*.   *Hourly Rate:*

Plaintiffs' attorneys, Debra Poulin charged an hourly rate of $190.00 and Tara Ford charged $175 per hour.  Both attorneys supplied affidavit testimony and resumes regarding their extensive legal experience. [Doc. No. 28, Exhibits 1, 2, 3A, 3B.]  In addition, Attorney Peter Cubra, who has significant legal experience in this locale and in representing people with disabilities, provided affidavit testimony regarding the reasonableness of both Plaintiffs' attorneys' hourly rates. [Doc. No. 28, Ex. 3.]

Ms. Poulin testified that Ms. Ford asked her to co-counsel on the case due to the amount of work involved, the knowledge that Belen Schools would have multiple attorneys working on the matter and because Ms. Poulin was a more experienced litigator for purposes of the due process hearing.  Ms. Poulin has practiced law for 18 years and has extensive legal experience in the areas of civil rights and advocacy for children, specifically children with disabilities.  She further testified that she is one of only about five New Mexico attorneys who represents children with disabilities in special

education cases.  She has been recognized by her peers for her advocacy and received several legal awards over the years.

Ms. Ford has practiced for about twelve years and has received several awards for her service to and legal representation of children and people with disabilities.  During the majority of her legal practice, Ms. Ford has worked for non-profit organizations.

Defendants do not challenge the hourly rates proposed by the Peñas' attorneys.  And, the Court concludes that the rates are reasonable, given the attorneys' expertise in this area of law and the prevailing rates charged by equally skilled counsel.

### iv.  Hours Expended:

Plaintiffs' two attorneys seek fees for approximately 476 hours of attorney time.  This figure is reduced from the actual hours worked, i.e., 588 hours.  The Court does find that the breadth of Plaintiffs' claims significantly enlarged the scope of the administrative process, and that fewer claims would have expedited the process and might have reduced the length of the hearing.  But, contrary to Defendants' position, i.e., Plaintiffs' attorneys "unnecessarily duplicated their efforts at every stage of the proceeding," the Court disagrees.  There is no indication of "churning" and  Plaintiffs' attorneys voluntarily reduced the number of hours for which they seek compensation because of their own recognition that some of their work was duplicative.[12]  So, too, they reduced their fee request due to travel time and other miscellaneous billings.  Indeed, Ms. Poulin reduced her request for fees by approximately $9,000, and Ms. Ford reduced her fees by about $10,000.  Plaintiffs' attorneys are commended for making a good faith effort in exercising billing judgment by reducing their fee

---

[12]The Tenth Circuit recognizes that time spent by two attorneys on the same general task is not *per se* duplicative, and further, that careful preparation often requires collaboration between counsel.  Lockard v. Pizza Hut, Inc., 162 F.3d 1062, 1077 (10th Cir. 1998) (internal citation omitted).

application.  Some additional reductions, however, are appropriate due to the scope of claims pressed which ultimately did not succeed.

The Court also observes that Plaintiffs' attorneys' billing records do not suffer from the usual infirmities that oftentimes support a reduction of the requested fee award.  For example, Plaintiffs' attorneys do not use block billing or lump tasks together.  Instead, their billing records are precise and do not appear to inflate time spent on work.  The time spent on the identified tasks appears reasonable.

In addition, the Court is able to compare and contrast some of the billing records of Plaintiffs' attorneys with those of defense counsel for the same time period.[13]  In reviewing billings by counsel for Plaintiffs and Defendants, the Court notes that between January 7 and January 18, 2004, defense counsel billed at least 74 hours for "hearing preparation" and various other work that appears to have been in preparation of the hearing, while Plaintiffs' two attorneys billed a total of slightly less than 74 hours for that same period of time.  Thus, the billing records of defense counsel support a finding that Plaintiffs' two attorneys' submissions are reasonable.

In determining the reasonableness of a fee request, the Court also considers the "complexity of the case, the number of reasonable strategies pursued, and the responses necessitated by the maneuvering of the other side."  After reviewing the briefs and attachments to the cross-motions, the Court concludes that this case did present complex issues involving the IDEA.  The fact that the administrative hearing lasted 11 days and that the hearing officer issued a 38-page decision supports a finding of complexity.  In addition, Plaintiffs pursued a number of claims that implicated different

---

[13]Plaintiffs sought records related to payment of attorney's fees by Belen Schools under provisions of the New Mexico Open Records Act, and attached those records as an exhibit to their motion.

issues and procedural requirements under the IDEA.[14]  Plaintiffs were also forced to respond to several defense motions for summary judgment during the underlying administrative proceedings, which were denied.[15]  Such motions seem to be the exception rather than the rule during administrative proceedings of this nature.  Plaintiffs were also required to respond to a motion to disqualify one of Plaintiff's attorneys during the administrative hearing, which, again, was denied.[16]

Ultimately, the Court does not question that this matter was unnecessarily extended into a very lengthy proceeding.  This was due not only to the scope and breadth of the claims, but also to Belen Schools' vigorous defense to all claims, which compelled Plaintiffs to expend much time.  The Court also notes that Plaintiffs made a good faith effort to resolve this case short of a due process hearing, and quite obviously, had Belen Schools settled, the expensive administrative hearing could have been avoided.

Defendants argue that the due process hearing was a "runaway" hearing that would not have occurred but for Ms. Peña's steadfast position that Dylan receive his education at one and only one facility – PEI.  Thus, defense counsel repeatedly asserts that nothing could resolve Ms. Peña's due process complaint short of paying for Dylan's education at PEI for an extended period of years.  And, as defense counsel emphasized during attempts to mediate this matter: "We'll mediate until the cows

---

[14]It is in this area that the Court concludes that the pursuit of some of these claims, many of which ultimately failed, generally increased the time required to prosecute and defend the matter.

[15]The Court does not find very compelling defense counsel's argument that their motions eventually "carried the day".  Similarly, defense counsel's position that "Plaintiff's failure to attach the IHO's prehearing ruling or the parties prehearing briefs is telling" is not helpful since Defendant did not attach the ruling or briefs either.

[16]This type of motion practice in IDEA administrative proceedings is not commonplace, and these pre-determination legal skirmishes did little but to increase the length and costs of the administrative process.

come home, but we won't be sending any public money to PEI, because we can't." As it turned out, Belen Schools could and did send public money to PEI for at least a good portion of one school year.

The Court rejects the protestations that Plaintiffs' attempts to settle this case were "illusory" or "no offers at all." The Court reviewed detailed affidavit testimony and evidence regarding Plaintiffs' settlement attempts and equally detailed information that Belen Schools made no counter-offers that might have been rejected. The fact that Ms. Peña made settlement offers, which with the clarity of hindsight were reasonable, gravitates against a finding that she was so entrenched in her position that settlement was illusory. Without presenting any evidence that Defendants made reasonable offers or counter-offers in an effort to settle this matter, it is equally clear that Belen Schools was as "entrenched" in its position as Plaintiffs. Defendants simply cannot complain that the failure to settle resulted only from illusory offers by Plaintiffs. Moreover, Defendants' position that they would mediate "until the cows came home" but would not pay money to PEI is indicative of Belen Schools' inalterable position that ultimately proved unsuccessful, at least in part.

For all of the above-stated reasons, the court concludes that Plaintiffs reasonably expended most of the hours for which they seek attorney's fees. However, this does not end the inquiry because the Court may make adjustments to the requested fees based on a plaintiff's overall success.

> ### iv.    Overall Success:

In Farrar, the Court held that a plaintiff may be denied recovery of attorney's fees when he only nominally prevails. "[T]he degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee . . . ." Tex. State Teachers Ass'n, 489 U.S. at 790. *See also* Urban, 89 F.3d at 729 (affirming denial of attorney fee

request where prevailing party did not succeed to the degree necessary to warrant an attorney fee award).

Here, Defendants argue strenuously that the Peñas' due process complaint was, in essence, unsuccessful because the Peñas did not attain their ultimate goal - payment of Dylan's private education and related transportation costs at PEI for an unspecified period of years. Defendants also assert that Plaintiffs' meager monetary reimbursement of a little over $4,316.01 and the award of compensatory therapy are "meaningless" and *de minimus*. Thus, Defendants' contend that Plaintiffs are entitled either to no award of attorney's fees or to a reduced award.[17]

The Court has already concluded that Plaintiffs' success was significant, perhaps especially significant in light of the very aggressive defense undertaken in this matter. The hearing officer found that Dylan was not receiving the FAPE to which he was entitled under the IDEA and ordered reimbursement to Plaintiffs for the period during which Dylan was not provided FAPE. Dylan now is receiving the FAPE to which he is entitled. While it is not clear that his due process complaint precipitated changes in the state institution where Dylan now receives his education, it is clear that Plaintiffs had to pursue their due process complaint in order to obtain the education and procedure for which the IDEA provides.

Notwithstanding these conclusions, the Court recognizes that the Peñas were not entirely successful in the claims they brought against Defendants and that the scope and breadth of the claims asserted increased the length and consequently, the costs of the proceedings. However, the claims were interrelated, and it is impossible to separate out attorney's fees related to the successful and unsuccessful claims. In order to reflect that the Peñas were not 100% successful and in recognition

---

[17]Defendants do not specify what amount of reduction might be appropriate.

that the scope and breadth of the claims pressed increased the length and complexity of the hearing, the Court will reduce Plaintiffs' attorney's fees by 13%, in addition to the discounts already offered by counsel.

### Conclusion

Plaintiffs' attorney, Debra Poulin, will be awarded reasonable attorney's fees in the amount of $ 41,143.17,[18] plus $1,342.55 in costs; Plaintiffs' attorney, Tara Ford, will be awarded reasonable attorney's fees in the amount of $ 34,682.55.[19]  In addition, each attorney is entitled to an award of a gross receipts tax of 6.75%.  Therefore, Ms. Poulin is entitled to a total fee award of $43,920.33 (plus costs), and Ms. Ford is entitled to a total fee award of $ 37,023.62.

IT IS THEREFORE ORDERED that both parties' motions for summary judgment [Doc. Nos. 28 and 32] are granted in part and denied in part, with the result that Defendants are ordered to pay Plaintiffs' attorneys fees and costs in the amount of $ 82,286.50 (including costs) as set forth above.


_Lorenzo F. Garcia_
Lorenzo F. Garcia
Chief United States Magistrate Judge

---

[18]This fee represents a 13% reduction of Ms. Poulin's requested fee of $47,291.00.

[19]This fee represents a 13% reduction of Ms. Ford's requested fee of $39,865.00.  Ms. Ford did not identify any costs to which she might be entitled.