IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DARLENE PENA, on behalf of her son,
DYLAN PENA,

    Plaintiffs,

v.                                Case No.:  CIV-04-1352 LFG RLP

BELEN CONSOLIDATED SCHOOLS and
BOARD OF EDUCATION OF BELEN
CONSOLIDATED SCHOOLS.

    Defendants.

## DEFENDANTS' PROPOSED FINDINGS AND CONCLUSIONS

Belen Consolidated Schools and the Board of Education of Belen Consolidated Schools, by and through its attorney of record, Cuddy Kennedy hereby proposes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. In the 2002-2003 school year, Pena was enrolled in the preschool/elementary school program at Presbyterian Ear Institute ("PEI"), a private school.

2. In the spring of 2001, Ms Pena was advised by staff at PEI to contact the School District to arrange for an Individualized Education Program meeting for Dylan.

3. Sometime in the fall of 2001, Ms. Peña called Rena Cash, special education program specialist at Belen Consolidated Schools ("BCS" or "the School District").

4. Ms. Pena advised Ms. Cash that she had a son who attended PEI; that he was going to remain in PEI, but she wanted to arrange for the School District to write an Individualized Education Program for him.

5. Ms. Peña advised Ms. Cash that she did not intend to enroll her son in any School District or other public program and that she only wanted BCS to pay for Dylan's tuition at PEI and reimburse her for transporting him to Albuquerque to attend PEI.

6. Dylan was referred to the School District's Child Find program on January 22, 2002.

7. Ms. Peña wrote on BCS' initial screening documents: I want him to continue at PEI, the oral school until he is ready to enter mainstream school."

8. Following the Child Find screening procedures, Dylan was evaluated by School District diagnostic personnel.

9. The School District held an IEP meeting on September 3, 2002. In that meeting, Ms. Peña and her parents and the PEI personnel cut off discussion about the public program that Belen was proposing.

10. The record of the meeting noted that Dylan's mother refused the public placement and that she would only agree to placement at PEI.

11. PEI personnel had brought to the meeting a document that outlined the narrowed education program was receiving at PEI.

2

Because Ms. Peña adamantly refused to consider anything but PEI, the School District incorporated into the IEP the description of the program Dylan was receiving at PEI.

12. Ms. Pena refused the public program option because she wanted her son educated using the methodology used at PEI.

13. Within a week of the September 2 IEP meeting, BCS personnel began trying to contact Ms. Peña to schedule occupational and physical therapy evaluations.

14. Ms. Peña declined, until December, to have Dylan evaluated.

15. When Ms. Peña finally agreed to the evaluations they were completed within a week.

16. A second IEP meeting was held in January, 2003, to consider the results of the o.t. and p.t. evaluations and to further discuss options for placements to implement Dylan's IEP.

17. The IEP team discussed fourteen different possible public school options for settings in which Dylan's IEP might be implemented.

Ms. Pena was adamant that Dylan was going to stay in at PEI.

18. Ms. Peña refused the District's proposal of a public placement, and maintained Dylan's enrollment at PEI.

19. Ms. Pena refused the public program because she wanted her son educated in the methodology employed at PEI.

20. The School District offered to provide occupational and physical therapy services for Dylan.

3

Beginning in January, 2003, Dylan began receiving occupational and physical therapy services through the School District.

21. At the January, 2003 IEP meeting, Ms. Peña again stated that she was only interested in obtaining tuition for the private program and mileage reimbursement from BCS.

On January 23, 2003, Ms. Pena filed a Complaint with the NMSDE, requesting that the School District be compelled to place Dylan at PEI and pay for his tuition and her mileage.

22. On .July 15, 2003, Ms. Peña filed a Due Process Complaint with NMSDE.

23. On September 4, 2003, Ms. Peña filed an Amended Due Process Complaint.

24. A hearing was conducted on the following dates: January 20, 21, 22, 23, 26, 27; March 17, 18 and 19, 2004.

25. The Impartial Hearing Officer (IHO) found against Ms. Pena on fourteen of the sixteen issues she had raised.

The IHO specifically found that the IEP drafted on January 10, 2003 was appropriate.

The IHO nonetheless ordered the District to pay for Ms. Pena's costs and her mileage for driving Dylan to PEI not only for the fall semester of the 2002-03 school year, but for the spring semester as well.

## CONCLUSIONS OF LAW

1. The IDEA impartial hearing procedures do not apply to complaints that a district failed to provide adequate services for a private schools child. These complaints must be brought under the state complaint process. C.F.R. 34 § 300;47 5(a).

4

2.      Because Dylan was a unilaterally placed private school child, the Impartial Hearing Officer lacked subject matter jurisdiction over Mrs. Pena's claims.

3.      A disabled student in a private school does not have an individually enforceable right to receive special education and/or related services from the local education agency; therefore, the IDEA does not give the parents a corresponding right to an impartial hearing over the failure of the district to provide special education and related services to a unilaterally placed private school child.

4.      Because the Impartial Hearing Officer is void for lack of subject master jurisdiction.

5.      LEAs have an obligation only to make available some benefit from the IDEA funds to the class of students whose parents voluntarily place them in private school.

6.      This is not an individual entitlement that runs to each parentally-placed private school child.

7.      The definition of the term "prevailing party" under 20 U.S.C. § 1415 (1)(3)(B) is the same as it is under 42 U.S.C. §1988. *Beard v. Teska*, 31 F.3d 942, 950 (10th Cir. 1994).

8.      Under § 1988, "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. *Farrar v. Hobby*, 506 U.S. 103, 112 (1992).

9.      Even where a parent formally prevails, in an impartial hearing under the IDEA, the determination of whether or not an award of attorney's fees was reasonable should be made

5

based upon the degree to which the parent was successful. *Urban v. Jefferson County School District R-1*, 89 F.3d 720, 729 (10th Cir. 1996).

10. Even where the parents receive relief at the administrative level, they are not entitled to attorneys' fees if they are not awarded their "ultimate goal" of placement of the child at their preferred school. *Id.*

11. Where the relief awarded is de minimus, the parents may not be considered the prevailing party.

12. Where placement is the most important legal issue, the failure of the parent to prevail on that issue amounts to a failure to create prevailing party status.

13. The decision of the IHO did not alter the legal relationship of the parties.

14. Mrs. Pena did not achieve her ultimate goal of having her son placed in a private program at the School District's request.

15. Mrs. Pena was not the prevailing party.

16. Mrs. Pena is not entitled to an award of her attorney's fees.

CUDDY, KENNEDY, ALBETTA & IVES, LLP


By:   *Electronically Filed January 10, 2006*
 Eleanor K. Bratton
 ATTORNEY FOR DEFENDANTS
 7770 Jefferson NE, Suite 440
 Albuquerque, New Mexico 87109
 Telephone:  (505) 888-1335

WE HEREBY CERTIFY that a true and correct
Copy of the foregoing pleading was mailed to
All counsel of record this __10_ day of _January_, 2006.

By: ___*Electronically Filed January 10, 2006*___
    Eleanor K. Bratton